IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2019

**STATE OF TENNESSEE v. DUSTIN TODD KING**

**Appeal from the Circuit Court for Marshall County
No. 2018-CR-150    Forest A. Durard, Jr., Judge**

_____

**No. M2019-00241-CCA-R3-CD**

_____

Dustin Todd King, Defendant, pled guilty to four counts of aggravated statutory rape and one count of violation of a no-contact order with the trial court to determine the length and manner of service of the sentences after a sentencing hearing. The trial court sentenced Defendant to an effective sentence of four years, eleven months and twenty-nine days, ordering partial consecutive sentencing. As a collateral consequence, the Defendant was placed on the sex offender registry. On appeal, Defendant challenges his sentence as excessive. After a review, we determine that the trial court sentenced Defendant to a sentence within the range for each conviction and followed the proper sentencing procedure. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Donna Hargrove, District Public Defender; Michael J. Collins, Assistant Public Defender, for the appellant, Dustin Todd King.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Andrew Wright, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On July 23, 2018, Defendant was arrested on warrants issued by the Marshall County General Sessions Court charging him with four counts of aggravated statutory rape. According to the affidavits accompanying the warrants, Defendant had "sexual intercourse with a 17[-]year[-]old female at his residence" on or about June 23, June 29, June 30, and July 8, 2018. The affidavits indicated that Defendant was 29 years of age and knew the age of the victim.[1] Defendant was granted bail and signed an order prohibiting him from contacting the victim. Phone records from the victim's phone indicate that Defendant called her numerous times the day after his release. A fifth warrant was issued for one count of violation of bond conditions on August 3, 2018.

Defendant gave a statement to police on July 30. In that statement, Defendant admitted that he met the victim at work. They "hung out at work and talked for several weeks" before they started dating in mid-June. Defendant, who was 29 years of age at the time, admitted that he knew that the victim was 17 years old. Defendant explained that "age didn't matter" and that he had sex with the victim for the first time on June 23 or 24. Defendant admitted that he had sex with the victim again on June 29 and 30. Defendant explained that he was arrested on July 7 in Williamson County for driving on a suspended license. The next day, the victim bonded Defendant out of jail. They returned to Defendant's house but did not have sex that day. Defendant explained that they were "safe" about sex and "planned to get married when she turned 18." Defendant stated that his arrest did not change their plans to get married.

The victim also gave a statement to police. She admitted that she and Defendant were in a relationship and that she had "consensual sex 2 or 3 times" with Defendant.

In September of 2018, Defendant was indicted by the Marshall County Grand Jury for four counts of aggravated statutory rape and one count of a violation of a no-contact order. Defendant pled guilty to all five counts of the indictment on December 5, 2018, with the trial court to determine the manner and service of the sentence after a sentencing hearing. At the guilty plea hearing, counsel for the State presented the following as the factual basis for the plea:

> [O]n or about several days, stemming from June 23rd through July 8th, [D]efendant . . . did engage in sexual penetration of a juvenile female, then the age of 17 years old. [Defendant] at the time was 29 years old. [Defendant's] date of birth is July 28, 1988. The victim's date of birth [is] 9/22/2000.

---

[1] This Court does not identify minor victims of sexual abuse.

There were four incidents of this, it was by all accounts consensual in so much as it was not forcible . . . . [Defendant] was arrested on these offenses. On the 23rd day of July he signed a no contact order with the juvenile victim. He was given notice he was to have no contact with her. He showed up in Court on the 31st day of July, signed an order waiving a hearing on that matter thereby he was restrained from having contact with the juvenile. However on the 2nd day of August, 2018[,] he called that individual 14 times in violation of that order.

After the State recited the factual basis for the plea, Defendant agreed that the factual basis for the aggravated statutory rape charges was accurate and admitted that he had contact with the victim in violation of the order but disputed that he contacted the victim 14 times. The trial court determined that Defendant was competent to enter the plea; that there was a factual basis for the plea; and that Defendant was entering the plea knowingly, voluntarily, and intelligently.

The trial court held a sentencing hearing. At the hearing, Paula Stejskal testified that she prepared the presentence report. She attempted to contact Defendant to complete the report. Defendant did not call her as instructed by the trial court. Ms. Stejskal explained that without the input from Defendant, she was unable to include information about Defendant's background in the report and was unable to assess his likelihood for recidivism.

The presentence report indicates that Defendant, in addition to the offenses at issue herein, had five prior convictions for driving with a suspended license, one conviction for violation of the driver's license law, one conviction for resisting arrest, one conviction for disorderly conduct, one conviction for a traffic offense for failing to have insurance, one conviction for possession of unlawful drug paraphernalia, one conviction for a speeding ticket, one conviction for violation of the seat belt law, and one conviction for violation of the financial responsibility law.

The victim's parents testified at the hearing. The victim's mother read a statement discussing the "emotional and mental anguish" caused by Defendant's actions. She explained that Defendant used marijuana in the victim's presence and lured her into the relationship using flattery and the promise of marriage. The victim's mother recalled that the victim spent $600 of her own money to bail Defendant out of jail after his arrest for driving on a suspended license. The victim's father admitted that he confronted Defendant at the restaurant where both Defendant and the victim worked. The victim's father also testified that Defendant called the victim fourteen times after he signed the no-

contact order. The victim's statement was also introduced at the sentencing hearing. The victim admitted that she had consensual sex with Defendant but that she felt like she "was doing something wrong." The victim acknowledged that she felt "manipulated" and "taken advantage of" by Defendant.

Defendant's coworker, Teresa Smith, testified on his behalf. She worked with both Defendant and the victim at Steak and Shake in Franklin, Tennessee. She described Defendant as an excellent worker. In his allocution, Defendant apologized to the victim's family and the trial court.

At the conclusion of the hearing, the trial court commented that the "[c]ase [wa]s actually worse than [the court] anticipated." The trial court noted that the victim's parents were "forgiving." The trial court determined that several enhancement factors applied: (1) that Defendant had a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range; (8) Defendant failed to comply with conditions of a sentence involving release into the community; (23) Defendant gave or exchanged controlled substances or other illegal drugs with a minor. T.C.A. §§ 40-35-114(1), (8), (23). As far as mitigating factors, the trial court determined that the criminal conduct neither caused not threatened serious bodily injury. T.C.A. § 40-35-113(1). However, the trial court refused to give this mitigating factor "a great deal of weight." The trial court noted that a Range I, standard offender sentenced to a class E felony was subject to a range of one to two years. Because of Defendant's nine prior misdemeanors and the application of the other two enhancement factors, the trial court sentenced Defendant to the maximum of two years for each statutory rape conviction and eleven months, twenty-nine days on the misdemeanor conviction for violating the no-contact order. With regard to consecutive sentencing, the trial court found that "only two [of the factors under Tennessee Code Annotated section 40-35-115] [were] arguably applicable." The trial court explained that both number two, the defendant is an offender whose record of criminal activity is extensive, and number five, the defendant is convicted of two or more statutory offenses involving sexual abuse of a minor, applied to Defendant. T.C.A. §§ 40-35-115(2), (5). The trial court disagreed with Defendant's position that this section only applied to more serious sexual crimes like aggravated rape or where the victim suffered mental or physical damage. The trial court also noted Defendant was "on the cusp of what [the court] would consider . . . extensive criminal history because he just keeps building it." The trial court utilized Defendant's nine prior misdemeanor convictions to support this finding. The trial court considered and denied alternative sentencing, finding that the "scales are heavily weigh[t]ed in favor of not granting alternative sentencing." The trial court found "absolutely . . . no confidence that [Defendant] would" abide by the terms of probation, pointing to multiple violations in the presentence report. The trial court was particularly "enraged" by Defendant's absolute

disregard for the no-contact order. The trial court found that the interests of society should be protected from possible future criminal conduct of Defendant and that less restrictive measures had been applied unsuccessfully to Defendant.

The trial court sentenced Defendant to two years as a Range I, standard offender on count one and count two. The trial court ordered these two counts to be served concurrently. On count three and count four, the trial court sentenced Defendant to two years as a Range I, standard offender. The trial court ordered counts three and four to be served concurrently with each other but consecutively to the two-year sentence in counts one and two. In count five, the trial court sentenced Defendant to eleven months and twenty-nine days, to be served consecutively to the two-year sentence in counts three and four "+ any unexpired sentence." Defendant's total effective sentence was four years, eleven months, and twenty-nine days. The trial court also ordered Defendant to have no contact with the victim and informed Defendant that he would be placed on the sex offender registry.

Defendant filed a timely notice of appeal.

*Analysis*

Defendant argues that his sentence is "excessive and contrary to the law" and "[in]appropriate under the facts as stated in the record." Specifically, Defendant complains that the trial court ordered him to serve the maximum sentences and that the sentences were ordered to run consecutively by application of Tennessee Code Annotated section 40-35-115(b)(5). The State, on the other hand, insists that the trial court did not abuse its discretion in finding "that the circumstances of these offenses along with other factors such as [D]efendant's prior record and failure to cooperate with authorities justified the sentence."

*A. Sentence Length*

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)

(citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709.

In sentencing the Defendant for aggravated statutory rape and violation of a no-contact order, the trial court considered the facts and circumstances of the offense, commenting that the case was "worse" than "anticipated." The trial court also reviewed Defendant's presentence report, noting Defendant's prior offenses and the fact that he had progressed from minor traffic offenses to crimes involving drugs and disorderly conduct. The trial court also considered "[D]efendant's physical and mental condition and social history," noting that there was not "a great deal" of information in the report because Defendant "did not cooperate" with the writer of the report. The trial court did find Defendant to be a "good worker" based on the testimony presented at the sentencing hearing. The trial court found Defendant to be a Range I, standard offender, which has a sentencing range between one to two years for the Class E felony of aggravated statutory rape and up to eleven months and twenty-nine days for the Class A misdemeanor of violating the no-contact order. T.C.A. §§ 40-35-111(e)(1), -112(a)(5). The trial court sentenced Defendant to two years on each aggravated statutory rape conviction and eleven months, twenty-nine days on the violation of the no-contact order conviction.

In our review, we determine that the trial court followed the proper sentencing procedure and sentenced Defendant to a sentence within the range for each conviction. In other words, the trial court did not abuse its discretion in sentencing Defendant to the maximum possible sentence for each conviction. Therefore, Defendant is not entitled to relief.

### B. Consecutive Sentencing

Defendant argues that the trial court erred in imposing partially consecutive sentences. The State argues that the trial court properly exercised its discretion in imposing partially consecutive sentences.

In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id.* at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)). As relevant to this case, the trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is an offender whose record of criminal activity is extensive" or that "[t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim." T.C.A. § 40-35-115(b)(2), (5).

Here, the trial court found by a preponderance of the evidence that the two factors above applied. With regard to extensive criminal activity, the trial court determined that Defendant was on the "cusp" of extensive history. With regard to conviction of two or more statutory offense involving sexual abuse of a minor, the trial court determined that Defendant "played on [the victim's] vulnerabilities." In particular, the trial court pointed to the victim's own admission that she met Defendant when she came out of a "toxic" relationship. The trial court commented on Defendant's marijuana use around the victim and "five or six . . . occasions of sexual intercourse." The trial court commented that the time period of the relationship was "admittedly short" but that the relationship likely would have continued had it not been "exposed" by Defendant's arrest and confrontation about the relationship by the victim's father. The trial court also took note of the fact that

the victim admitted that her relationship with Defendant "changed her life." Based on these factors, the trial court found that partial consecutive sentencing was appropriate. The trial court deemed Defendant's conduct "reprehensible." Because the trial court correctly found application of two of the consecutive sentencing factors, the trial court did not abuse its discretion in ordering consecutive sentencing.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE